UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN CARLOS BASTIDE-HERNANDEZ,<br><br>Defendant. | No. 1:18-cr-02050-SAB<br><br>ORDER DISMISSING INDICTMENT |

Before the Court is Mr. Bastide-Hernandez's Motion to Dismiss, ECF No. 26. Mr. Bastide-Hernandez requests the Court dismiss the Indictment filed on August 14, 2018, charging him with illegal reentry, in violation of 8 U.S.C. 1326. ECF No. 1. The Court held a hearing on December 14, 2018. Paul Shelton appeared on behalf of Defendant, who was present in the courtroom, and Richard Burson appeared on behalf of the Government. The Court took the motion under advisement.

After careful consideration of the parties' briefing and oral argument, the Court **grants** Defendant's motion.

**FACTUAL BACKGROUND**

This case involves the interplay between three sources of legal authority: a recent United States Supreme Court opinion (*Pereira v. Sessions*, __ U.S. __, 138 S. Ct. 2105, 201 L. Ed. 2d 433 (2018); a statute (8 U.S.C. § 1229); and regulations passed pursuant to

ORDER DISMISSING INDICTMENT ~ 1

congressionally delegated authority (8 C.F.R. § 1003 *et. seq.*). Mr. Bastide-Hernandez seeks to dismiss the Indictment alleging one count of illegal reentry into the United States in violation of 8 U.S.C. § 1326 due to the Government's failure to support an element of that crime–a previous denial of admission, or an exclusion, deportation, or removal order. While Mr. Bastide-Hernandez was removed on December 17, 2010, he now alleges that the removal order is void for lack of jurisdiction, and incapable of serving as an element of the instant offense.

Many of the underlying facts are disputed. The various agencies involved in Mr. Bastide-Hernandez' removal proceedings repeatedly ignored or contravened the statutory or regulatory procedures for those procedures, making the record difficult to unravel. However, the agreed-upon facts establish that Mr. Bastide-Hernandez is entitled to relief.

Mr. Bastide-Hernandez is alleged to be a Mexican citizen, who first entered the United States in 1996. He was granted a voluntary departure to Mexico in 1999, and two more in 2004. On April 26, 2006, the Department of Homeland Security ("DHS") elected to pursue removal proceedings, and personally served Mr. Bastide-Hernandez with a document titled "Notice to Appear." A second document, also titled "Notice to Appear," was allegedly served upon Mr. Bastide-Hernandez on the same day, updating his address as the immigration detention facility in Tacoma, Washington, ECF No. 26-2.

Both documents included a Certificate of Service, which includes the averment that Mr. Bastide-Hernandez "was provided oral notice in the Spanish language of the time and place of his or her hearing." In both instances, that averment was not true. For while both documents ordered Mr. Bastide-Hernandez to appear before an immigration judge in Seattle, Washington, the time of that hearing was listed as "a date to be set at a time to be set." The second putative Notice to Appear was sent to the Executive Office for Immigration Review on May 2, 2006.

The immigration court, and not DSHS, sent a second document, titled a "Notice of Hearing," to Mr. Bastide-Hernandez. ECF No. 26-4. That document appears to have been to the custodial officers at the ICE detention center via fax, because that method of

ORDER DISMISSING INDICTMENT - 2

delivery was handwritten at the bottom of the document instead of either of the listed forms of service: personal service or service by mail. Mr. Bastide-Hernandez does not concede receipt of this document. The notice of hearing stated that a master hearing in the removal proceeding had been set for June 14, 2006, at 1:00 P.M.

A removal order issued from that hearing, and as with the notice of hearing, a handwritten notation at the bottom of the order indicates that it was served via fax to the custodial officers for Mr. Bastide-Hernandez. Based upon that form of service, Mr. Bastide-Hernandez appears not to have been physically present at the removal proceeding. The Government infers that he may have been present through video-teleconferencing, although Mr. Bastide-Hernandez does not concede that he was present at that hearing, through video-teleconferencing or otherwise. Nor does Mr. Bastide-Hernandez concede receipt of that removal order.

The 2006 removal order was reinstated and used as the basis for three subsequent removals, however, it remains the only removal order capable of serving as a predicate element for the instant offense. On May 25, 2018, Mr. Bastide-Hernandez again came into contact with immigration officials and was charged with illegal reentry three months later.

Mr. Bastide-Hernandez argues that the Government cannot show that a prior removal order was issued because based on the regulations governing immigration hearings, the 2006 immigration court lacked subject-matter jurisdiction to render its order. Thus, Mr. Bastide-Hernandez moves this court to dismiss the indictment. The Government contends that the immigration court did have jurisdiction to issue the 2006 removal order, and even if it didn't, 8 U.S.C. § 1326(d) bars Mr. Bastide-Hernandez from collaterally challenging the validity of the 2006 removal order.

## ANALYSIS

### (1) The 2006 Immigration Court Lacked Subject-Matter Jurisdiction

An initial explanation of the relevant statutory, regulatory, and decisional authority may provide clarity regarding this Court's decision. The Attorney General has the authority to define, by regulation, the jurisdiction of immigration courts. 8 U.S.C. §

ORDER DISMISSING INDICTMENT - 3

1103(g)(2). The Parties agree that the relevant regulation governing the jurisdiction of immigration courts for removal proceedings is 8 C.F.R. 1003.14. That regulation requires a "charging document" to be "filed with the Immigration Court" by the "Service" (the Immigration and Naturalization Service, now Immigration and Customs Enforcement, ICE.) 8 C.F.R. 1003.14(a).

A "charging document" is defined by regulation to mean a "Notice to Appear, a Notice of Referral to Immigration Judge, [or] a Notice of Intention to Rescind and Request for Hearing by Alien." 8 C.F.R. § 1003.13. Section 1229 of the Immigration and Nationality Act, titled "Initiation of Removal Proceedings," provides the statutory framework for the initiation of the 2006 proceedings. 8 U.S.C. § 1229. The Supreme Court interpreted this statute and found that Section 1229(a) contains "quintessential definitional language" regarding what constitutes a "notice to appear." *Pereira*, __ U.S. __, 138 S. Ct. at 2116.

Among the definitional requirements listed in § 1229(a) is the requirement that a Notice to Appear must provide the time and place of the relevant hearing. 8 U.S.C § 1229(a)(1)(g)(i). The Supreme Court in *Pereira* held that based on the clear language of that statute, "when the term 'notice to appear' is used elsewhere in the statutory section, including as the trigger for the stop-time rule, it carries with it the substantive time-and-place criteria required by § 1229(a)." *Pereira*, __ U.S. __, 138 S. Ct. at 2116.

In *Pereira*, the non-citizen sought an adjustment of status based upon the accrual of ten years of continuous presence in the United States. *Id*, at 2110. Because the petitioner had been served with a putative notice to appear, the Government argued that his term of continuous presence ended, under 8 U.S.C. § 1229(b)(1)'s "stop-time rule." *Id*. In an 8-1 opinion, the Supreme Court held that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a),' " and thus, the stop-time rule was not triggered. *Id*.

Mr. Bastide-Hernandez argues that under *Pereira*, no "charging document" was filed because the Notice to Appear filed with the immigration court did not include date-

and-time information. Thus, he argues, the immigration court was never vested with jurisdiction. The Government argues that *Pereira* does not apply.

### (A) Pereira's Interpretation Applies Outside of the Stop-Time Rule Context

The Government argues that *Pereira*'s holding should be limited to the stop-time rule context, alleging first that the Supreme Court expressly narrowed its holding to the stop-time context, and second that the remedy granted impliedly shows that the Supreme Court could not have intended to create the rule that a defective notice to appear deprives an immigration court of jurisdiction. This Court disagrees, and holds it is bound by *Pereira*.

The Supreme Court in *Pereira* took care to describe the contours of its holding. It noted that the question presented by the petitioner swept in all the requirements listed in 8 U.S.C. § 1229(a)(1), but that the notice to appear included all of the information required except for the time requirement of 8 U.S.C. § 1229(a)(1)(G)(i). *Pereira*, __ U.S. __, 138 S. Ct. at 2113. Accordingly, the Supreme Court expressly reserved for another day the determination of whether a putative notice to appear that omits other information listed in 18 U.S.C. § 1229(a)(1) may nonetheless satisfy the statutory requirements. *Id.*, n.5. Having thus narrowed the scope of the question presented to only the time and place requirement, the Court held that a "document that fails to include such information is not a 'notice to appear under section 1229(a)', and thus does not trigger the stop-time rule." *Id.*, at 2118.

Thus, while *Pereira*'s holding is narrow in that it only addresses date and time information, it operates as a firm and clear syllogism. The first clause (" 'A putative . . . 1229(a)' ") interprets § 1229(a), and the second clause ("and thus . . . stop-time rule") constructs § 1229(b)(d)(1). While the construction of the stop-time rule does not apply to this case, the interpretation of the definiton of a notice to appear does, and is binding on this Court. *See MK Hillside Partners v. Comm'r of Internal Revenue*, 826 F.3d 1200, 1206 (9th Cir. 2016)("[W]e are 'bound not only by the holdings of [the Supreme Court's] decisions but also by their mode of analysis.'") (quoting *United States v. Van Alstyne*, 584 F.3d 803, 813 (9th Cir. 2009)); *also see* Antonin Scalia, *The Rule of Law As A Law of Rules*, 56 U. CHI. L. REV. 1175, 1176 (1989) ("[W]hen the Supreme Court of the federal system, or of

ORDER DISMISSING INDICTMENT ว 5

one of the state systems, decides a case, not merely the outcome of that decision, but the mode of analysis that it applies will thereafter be followed by the lower courts within that system.")

The Government's second argument for limiting *Pereira*'s holding is based on the remedy granted: a remand to the immigration court. The Government argues that the Supreme Court would not have remanded the matter to the immigration court unless it impliedly held that the immigration court had jurisdiction. The Supreme Court did not reach the issue of jurisdiction because neither party raised it. Generally, a question not raised by counsel or discussed in the opinion of the court is not considered decided merely because it might have been raised and considered. *United States v. Mitchell*, 271 U.S. 9, 14, 46 S. Ct. 418, 420, 70 L. Ed. 799 (1926) More specifically, a "*sub silentio* assumption of jurisdiction in a case", even when decided by the United States Supreme Court, " 'does not constitute binding authority on the jurisdictional question.' " *Thompson v. Frank*, 599 F.3d 1088, 1090 n.1 (9th Cir. 2010) (quoting *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1363 (9th Cir. 1998)). The Supreme Court had no reason to consider the jurisdiction of the immigration court, and this Court declines to read the remand disposition as providing any indication on the matter.

A coordinate court from this district has ruled on a similar motion and found *Pereira* applicable. *See United States v. Virgen-Ponce*, 320 F.Supp.3d 1164, 1166 (2018). This Court notes that the decisions of other district judges in this district are not binding on this Court, *see Camreta v. Greene*, 563 U.S. 692, 710, 131 S.Ct. 2020, 2033 n. 7 (2011), but finds the reasoning of *Virgen-Ponce* persuasive. Thus, this Court finds *Pereira*'s interpretation of 8 U.S.C. § 1229(a) applicable outside of the stop-time rule context. However, the direct provision at issue is not 8 U.S.C. § 1229. Rather, it is the regulation which governs the vesting of jurisdiction with the immigration court in removal proceedings; 8 C.F.R. § 1003.13.

//

//

ORDER DISMISSING INDICTMENT - 6

*(B) The Statutory Definition of Notice to Appear Applies to 8 C.F.R. § 1003.13.*

8 C.F.R. § 1003.13 states that jurisdiction vests when a "charging document" is filed with the immigration court by the service. A "charging document" is defined as "the written instrument which initiates a proceeding before an Immigration Judge," and for proceedings initiated after April 1, 1997, that includes a "Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." 8 C.F.R. §1003.13.

Although the Government conceded at oral argument that 8 U.S.C. § 1229(a) does provide the only definition for a Notice to Appear, it contends that separate regulations, 8 C.F.R. § 1003.15 and 8 C.F.R. § 1003.18 trump the clear statutory language of 8 U.S.C. § 1229(a)(1), and provide the functional requirements of the Notice to Appear referenced in 8 C.F.R. § 1003.13. They do not.

The Government appears to argue that there are in effect two Notices to Appear: a statutory Notice to Appear, as described by 8 U.S.C. § 1229(a), and a regulatory Notice to Appear, as described by the aforementioned regulations, 8 C.F.R. § 1003.15. The Government bases this argument on the fact that 8 U.S.C. § 1229 describes a Notice to Appear served on a noncitizen, while 8 C.F.R. § 1003.14 specifies a charging document filed with the immigration court. In practice, and by regulation, there are not two classes of Notices to Appear.

The regulation in question, titled "Contents of the order to show cause and notice to appear and notification of change of address," contains a subsection that lists "administrative information which the Service is required to provide to the Immigration Court." As the Government appears to have conceded, 8 C.F.R. § 1003.15 is not a definition of a notice to appear. It lacks the parenthetical phrase "(in this section referred to as a 'notice to appear')" which the *Pereira* court held was "quintessential definitional language." *Pereira*, __ U.S. __, at 2116. Instead, by its own terms, it is an additional list of "administrative information" required to be given to the immigration court. This includes some items, such as the noncitizen's registration number, alleged nationality and citizenship, and the language that

ORDER DISMISSING INDICTMENT - 7

the noncitizen understands, which are not required by the statute. 8 C.F.R. § 1003.15(c). This makes sense. These requirements help facilitate the expedient resolution of removal proceedings. Thus, this regulation does not define a second class of Notice to Appear, but instead provides a list of additional pieces of information that the Service is required to provide the immigration court.

In practice, this is made clear. The Notice to Appear that is served upon noncitizens is Form I-862, the same form that is filed with the immigration court. The Immigration Court Practice Manual specifies that "Removal proceedings begin when the Department of Homeland Security files a Notice to Appear (Form I-862) with the immigration court after it is served on the alien." Imm. Ct. Pract. Man., § 4.2, 2018. Form I-862 contains the various advisements and warning required under 8 U.S.C. § 1229(a), including a field for the entry of the time and date of the removal hearing. There are not two Notices to Appear – but one, and the "substantive time and place criteria required by § 1229(a)" apply to it. *Pereira*, at 2116.

The second regulation that the Government relies on, 8 C.F.R. §1003.18, is equally unpersuasive. That provision, titled "Scheduling of Cases," provides that:

> In removal proceedings pursuant to section 240 of the Act, the Service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable. If that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing.

8 C.F.R. § 1003.18(b). The Supreme Court in *Pereira* heard and rejected the argument that this provision relaxes the time and date requirement of § 1229(a). This Court does too.

This regulation is in clear contrast with the requirement of 8 U.S.C. § 1229(a)(1)(g). An agency cannot, through the passage of a regulation, change a statute. The power of executing the laws provides agencies the authority to resolve questions left open that arise during the law's administration, but "it does not include a power to revise clear statutory terms that turn out not to work in practice." *Util. Air Regulatory Grp. v. E.P.A.*, 573 U.S.

ORDER DISMISSING INDICTMENT ३ ७ 8

302, 327, 134 S. Ct. 2427, 2446, 189 L. Ed. 2d 372 (2014). "If there is any conflict between the statute and the regulation, the former prevails." *Duke v. United States*, 255 F.2d 721, 724 (9th Cir. 1958).

The inconsistency between this statutory provision is partially explained by the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009–546. The Department of Justice issued a Proposed Rule, in 1997, which sought to implement the provisions of IIRIRA. 62 FR 443-517 (1997). That rule expressly stated, in a section titled "The Notice to Appear (Form I-862)", that "[t]he charging document which commences removal proceedings under section 240 of the Act will be referred to as the Notice to Appear, Form I-862," describing a number of the new requirements of a Notice to Appear *Id.*, at 449. That section continued to state:

> In addition, the proposed rule implements the language of the amended Act indicating that the time and place of the hearing must be on the Notice to Appear. The Department will attempt to implement this requirement as fully as possible by April 1, 1997. Language has been used in this part of the proposed rule recognizing that such automated scheduling will not be possible in every situation (e.g., power outages, computer crashes / downtime.)

*Id.* 8 C.F.R. § 1003.18 was contained within that proposed rule as implemented, with the "where practicable" *provisio. Id.* at 457. Thus, 8 C.F.R. § 1003.18 is best interpreted as *requiring* time and date information, absent an exceptional circumstance where an external factor rendered the computerized dynamic scheduling system in use at the time inoperable. Not only is it clear that the Notice to Appear contemplated within the regulations is the same Notice to Appear defined in 8 U.S.C. § 1229(a), the regulations that the Government relies upon to relieve itself of the time and place requirements were an attempt to incorporate them into practice.

//

//

ORDER DISMISSING INDICTMENT - 9

### *(C) The Notice of Hearing Did Not Cure the Notice to Appear*

The Government argues in the alternative that the immigration court was vested with jurisdiction when the Notice of Hearing was sent by the immigration court to Mr. Bastide-Hernandez. However, the immigration court's service of a notice of hearing fails to comport with many requirements of 8 C.F.R. § 1003.14(a). The Notice of Hearing is descriptively not capable of vesting jurisdiction under the regulation. First, a notice of hearing is not a "charging document." *See* 8 C.F.R. § 1003.13. Second, the regulation refers to charging documents "filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). The term "filed" is defined elsewhere as "the actual receipt of a document by the appropriate Immigration Court." 8 C.F.R. § 1003.13. The Notice of Hearing was not filed with the immigration court by the service, it was sent by the immigration court. ECF No. 26-4.

Finally, the method by which the Notice of Hearing was served was inconsistent with both the statutory requirements for service for a Notice to Appear, and the regulatory requirements. 8 U.S.C. § 1229(a)(1) requires the notice to be given in person or by mail upon either the noncitizen or the noncitizen's counsel of record, and the regulation which vests jurisdiction specifically requires a certificate of service showing service pursuant to a separate regulation which echoes that requirement. 8 C.F.R. § 1003.14(a). The cross-referenced regulation requires service either "in person or by first class mail to the most recent address contained in the Record of Proceeding," stating "[a]ny documents or applications not containing such certification will not be considered by the Immigration Judge unless service is made on the record during a hearing." 8 C.F.R. § 1003.32(a). The Notice of Hearing was served by fax, and by its own regulations the immigration court should not have considered it.

The Government contends that a Ninth Circuit case, *Popa v. Holder*, upholds the use of a notice of hearing to "cure" a defective Notice to Appear. 571 F.3d 890, 895-96 (9th Cir. 2009). *Popa* did not address the regulatory question of the immigration court's jurisdiction. It addressed the question of whether a non-citizen who was ordered removed *in absentia* due to a failure to receive a Notice of Hearing could challenge the removal order based on the

absence of time and date information in the Notice to Appear, when the non-citizen failed to provide the Court with an updated mailing address.

When the Supreme Court undercuts the theory or reasoning underlying a prior circuit precedent in such a way that the cases are clearly irreconcilable, the Supreme Court's decision effectively overrules the circuit court's decision. *Dent v. Sessions*, 900 F.3d 1075, 1081 (9th Cir. 2018). To the extent that *Popa* held that constructive notice could be found where a document is undeliverable due to the non-citizen's failure to update a mailing address, it remains good law. To the extent that *Popa* held that a Notice to Appear is not required to contain time and place information under 8 U.S.C. § 1229(a), it was overruled by *Pereira*. Thus, the putative notice to appear was not a Notice to Appear, and the Notice of Hearing did not cure that document.

### (D) The Immigration Court Lacked Jurisdiction

Under *Pereira*, the "charging document" contemplated by 8 C.F.R. § 1003.15 was required by statute and regulation to include time and date information. The purported Notice to Appear in this case did not. The Government argues that even if the Notice to Appear was deficient, it would not deprive the immigration court of jurisdiction, analogizing a Notice to Appear with a criminal indictment. To the contrary, the cases that the Government relies on demonstrate why a deficient "charging document" goes to the jurisdiction of the immigration court. *See* ECF 28 at pp 14-15, *citing United States v. Cotton*, 535 U.S. 625, 630-31 (2002), *United States v. Williams*, 341 U.S. 58, 66 (1951), *Lamar v. United States*, 240 U.S. 60, 64-65 (1916), and *United States v. Velasco-Medina*, 305 F.3d 839, 845-46 (9th Cir. 2002)). Those cases actually show that the immigration court lacked jurisdiction, because it looks to the statutory grant of jurisdiction to determine whether a defective charging document deprives an Article III court of jurisdiction.

*Cotton* overruled *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), in which the Supreme Court originally held that errors in an indictment deprived a criminal court of jurisdiction. *Cotton*, 535 U.S. at 629, 122 S. Ct. at 1784, 152 L. Ed. 2d 860

ORDER DISMISSING INDICTMENT ₹ 11

(2002). In so holding, the Supreme Court in *Cotton* explained that the original conception of "jurisdiction," an expansive notion that was "more fiction than anything else," had changed to mean "the court's statutory or constitutional *power* to adjudicate the case." *Id.* (emphasis original.) Thus, the *Cotton* court asked whether the criminal court's jurisdiction was established by the charging document (there, a criminal indictment.)

An Article III Court's jurisdiction in criminal cases extends to "all crimes cognizable under the authority of the United States." *Id.*, at 630, 1785 (*citing Lamar v. United States*, 240 U.S. 60, 36 S.Ct. 255, 60 L.Ed. 526 (1916). In *Lamar*, the Supreme Court looked to the Judiciary Act of the day to determine the jurisdiction of federal district courts to hear criminal cases. *Lamar*, 240 U.S. 60, 65, 36 S. Ct. 255, 256, 60 L. Ed. 526 (1916). Likewise, in *Williams*, the Court first looked to the Judiciary Act to determine the jurisdiction of the district court, stating that then, as now, federal district courts have "jurisdiction of offenses against the laws of the United States." *Williams*, 341 U.S. 58, 65, 71 S. Ct. 595, 599, 95 L. Ed. 747 (1951) (citing 18 U.S.C. § 3231). Finally, in *Velasco-Medina*, the Ninth Circuit held that the State's failure to allege the requisite element of specific intent in an indictment in an Article III district court for attempted illegal reentry did not deprive the Article III district court of jurisdiction, relying on *Cotton*. *Velasco-Medina*, 305 F.3d at 846 (9th Cir. 2002).

These cases support the proposition that a court's jurisdiction is rooted in its enabling statute and/or constitutional grant. For an Article III district court, the source of jurisdiction to hear federal criminal cases is 18 U.S.C. § 3231. That statute provides that: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. The jurisdiction of such a court is not established by the filing of a charging document, and thus, a defective charging document does not deprive it of jurisdiction.

Unlike a criminal court, however, the regulatory grant of jurisdiction for an immigration court's jurisdiction is established by a charging document. Thus, each of the above-cited cases support the proposition that an immigration court lacks jurisdiction

ORDER DISMISSING INDICTMENT – 12

unless and until a "charging document" is "filed with the Immigration Court by the Service". 8 C.F.R. § 1003.14(a). *Pereira* makes clear that a putative Notice to Appear that lacks time and place information is not a Notice to Appear. As a result, no valid charging document was filed and jurisdiction never vested.

### (2) The Limitation on Collateral Attacks on Underlying Deportation Orders Is Inapplicable When the Purported Deportation Order Was Issued *Ultra Vires*

The Supreme Court, in *Mendoza-Lopez*, addressed the issue of whether "an alien who is prosecuted under 8 U.S.C. § 1326 . . . may assert in that criminal proceeding the invalidity of the underlying deportation order." *U.S. v. Mendoza-Lopez*, 481 U.S. 828, 830, 107 S. Ct. 2148, 2150, 95 L. Ed. 2d 772 (1987). 8 U.S.C. § 1326, the statute criminalizing illegal reentry, was originally silent on when, if ever, a criminal defendant could challenge the validity of an underlying deportation order used as an element of the crime. *Mendoza-Lopez*, 481 U.S. at 837, 2154. The Supreme Court interpreted this silence as congressional intent not to allow the validity of the deportation to be contestable in a § 1326 prosecution. *Id*. However, the Court continued to hold that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." *Id*., 837-38, 2155. In that case, the Court held that due process requires the availability of collateral attacks where the defects in the proceeding effectively eliminated the ability for judicial review. *Id*.

In response, Congress amended 8 U.S.C. § 1326 in the Public Laws of 1996, adding a new subsection titled "Limitation on Collateral Attacks on Underlying Deportation Order." *See United States v. Gonzalez-Flores*, 804 F.3d 920, 926 (9th Cir. 2015). The new section requires a defendant to prove that (1) they exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. §

1326(d). In the Ninth Circuit, there is an implied fourth requirement of prejudice. *See United States v. Valdez-Novoa*, 780 F.3d 906, 916-17 (9th Cir. 2015). This statutory framework codified *Mendoza-Lopez*'s narrow holding that a collateral attack must be allowed where the alleged defect precluded other forms of judicial review, but it does not speak to the question before this court: when may a defendant challenge the validity of a deportation order issued from a court that lacked jurisdiction?

"A petitioner is entitled to relief from a defective NTA if he shows that the Immigration Court lacked jurisdiction." *Lazaro v. Mukasey*, 527 F.3d 977, 980 (9th Cir. 2008) (citation and internal quotation marks and brackets omitted). The Supreme Court in *Cotton* explained that the contemporary concept of subject-matter jurisdiction "involved a court's power to hear a case," and thus "can never be forfeited or waived," and that "[c]onsequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court." 535 U.S. at 629, 122 S. Ct. at 1784, 152 L. Ed. 2d 860 (2002).

Not only does this comport with general rules regarding challenges for jurisdiction, *see United States v. Erazo-Diaz*, No. 18-cr-0031, at *5 (D. Ariz. Dec. 4, 2018) (collecting cases and reaching same conclusion), it makes sense that a challenge to the immigration court's jurisdiction need not comply with § 1326(d)'s limitations on collateral attacks. Those requirements presume the existence of some proceeding through which the defendant could have raised the basis for the challenge. Just as that collateral attack limitation would not bar a defendant from pointing out that what the prosecutor alleges is a prior deportation order is in fact a blank piece of paper, it does not bar a challenge to an immigration court's jurisdiction that would give the deportation order the same legal effect. Absent jurisdiction, the removal order is void on its face and it is "the duty of this and every other court to disregard it." *Wilson v. Carr*, 41 F.2d 704, 706 (9th Cir. 1993); *see also Virgen-Ponce*, 320 F.Supp.3d at 1166.

Therefore, notwithstanding 8 U.S.C. § 1326(d), there remains a free-standing due process right to challenge a deportation order issued from a court that lacked subject-

ORDER DISMISSING INDICTMENT ⁓ 14

matter jurisdiction in a subsequent criminal case in which that order is used as an element, as the immigration court proceeding, its orders, and any protections it may have purported to offer were *void ab initio*.[1]

Accordingly, Mr. Bastide-Hernandez has shown that he is entitled to relief.

//
//
//
//
//
//
//
//
//
//
//

---

[1] If this Court were to apply the 8 U.S.C. § 1326(d) factors, it would likely find them met. Mr. Bastide-Hernandez is not required to show exhaustion of administrative remedies as the proceeding was not an exercise of proper jurisdiction. *See Erazo-Diaz*, 2018 WL 6322168 at *5; *United Farm Workers of Am., AFL-CIO v. Ariz. Agric. Emp't Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982). Mr. Bastide-Hernandez can also show that the 2006 Removal Order was fundamentally unfair. Proceedings are "fundamentally unfair" if "(1) [a defendant's] due process rights were violated by defects in his underlying deportation proceedings, and (2) he suffered prejudice as a result of the defects." *Zarate-Martinez*, 133 F.3d at 1197. Mr. Bastide-Hernandez's due process rights were violated through the issuance of an *ultra vires* removal order, and if he was not present at the removal hearing he may have been entitled to rescission of the order under 8 U.S.C. § 1229a(b)(5)(C)(ii).

# CONCLUSION

Mr. Bastide-Hernandez's 2006 Removal Order is void for lack of jurisdiction. Therefore, it cannot serve as the basis for the Indictment charging Mr. Bastide-Hernandez with illegal reentry.

Accordingly, **IT IS ORDERED**:

1. Defendant's Motion to Dismiss, ECF No. 26, is **GRANTED**. The Indictment in the above-captioned matter is **DISMISSED**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order and furnish copies to counsel.

**DATED** this 20th day of December 2018.



_____
Stanley A. Bastian
United States District Judge

ORDER DISMISSING INDICTMENT ~ 16